UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-03-0368-1 |
| | § | CIVIL ACTION  NO. H-10-1939 |
| ANANT MAUSKAR, | § | |
| | § | |
| Defendant-Movant. | § | |

## MEMORANDUM AND RECOMMENDATION DENYING MOVANT'S § 2255 MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is the Government's Response (Document No. 541) and Motion to Dismiss (Document No. 542) the "Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255" filed by Anant Mauskar (Document No. 525). Having considered Mauskar's Motion to Correct Sentence, the Government's Response and Motion to Dismiss, the record of the proceedings in the underlying criminal case and on appeal, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the United States' Motion to Dismiss be GRANTED, that Mauskar's § 2255 Motion be DENIED, and that this § 2255 proceeding be DISMISSED with prejudice.

## I.      Procedural History

Movant Anant Mauskar ("Mauskar"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255. This is Mauskar's first motion pursuant to § 2255.

On August 18, 2004, Mauskar was charged by superseding indictment (Document No. 165) with health care fraud and conspiracy to commit health care fraud.  Mauskar pled not guilty and proceeded to trial.  On April 4, 2005, after a twenty day jury trial, a mistrial was declared after the jury could not reach a verdict.  (Document No. 253).  Thereafter, upon re-trial, Mauskar was found guilty of counts 1, 2, 4, 6, 9, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, and 40, and not guilty on counts 3, 5, 7 and 8.  (Document No. 348).  On June 16, 2006, following the preparation of a presentence investigation report, to which Mauskar filed Objections (Document No. 435), Mauskar was sentenced to 60 months confinement on count one, 120 months confinement on count 2, and 15 months confinement on all the other counts, with the terms of confinement on counts one and two to run concurrently, and the terms of imprisonment on the remaining counts to run concurrently with each other, but consecutive to the terms of imprisonment on counts one and two, for a total term of imprisonment of 135 months.  (Document No. 445).  Mausakar was also ordered to pay restitution in the amount of $14,369,247.00.  A Judgment of Conviction was entered on June 28, 2006.  (Document No. 456).

Mauskar appealed to the Fifth Circuit Court of Appeals, which affirmed his conviction and sentence in a published opinion on January 30, 2009.  *United States v. Mauskar*, 557 F.3d 219 (5th Cir. 2009); (Document Nos. 508 & 509).  Mauskar's petition for writ of certiorari was denied on June 1, 2009.  (Document No. 511).  This § 2255 proceeding, filed by counsel on May 29, 2010, followed.  (Document No. 525).  The Government has filed a Response and a Motion to Dismiss (Document Nos. 541 & 542), to which Mauskar has filed a Reply  in opposition.  (Document No. 30 in Civil Action No. H-10-1939).  This § 2255 proceeding is now ripe for ruling.

2

## II.     Factual Background

The factual background, as set forth by the Fifth Circuit Court of Appeals in its decision

affirming Mauskar's conviction, is as follows:

> Viewed in the light most favorable to the jury's verdict, the record establishes that Anant Mauskar, a licensed physician, engaged in a conspiracy to defraud Medicare by falsely certifying that he had personally provided or supervised physical therapy services to patients of the Mirage Medical Group operated by Tonya Williams and Kimberly Selders. To effectuate this fraud, Williams paid Mauskar during the fall of 1999 to sign patient charts certifying that he had provided or supervised physical therapy services despite the fact that he had not done so. When asked by a Medicare fraud investigator whether he had actually performed or personally supervised physical therapy services for patients of the Mirage Medical Group, Mauskar stated that he had even though he had not.
>
> Applying the same standard, the record also establishes that Mauskar conspired to defraud Medicare and Medicaid by falsely certifying that patients needed motorized wheelchairs and by performing unnecessary medical procedures and tests on those patients. "Recruiters" compensated for their efforts brought an enormous number of patients to Mauskar's office to facilitate this fraud; in 2002, for example, Mauskar prescribed 1,766 wheelchairs. Durable medical equipment ("DME") companies used Mauskar's certificates of medical necessity to obtain payment for medically unnecessary wheelchairs. The companies compounded the fraud by delivering less expensive scooters to the patients, rather than the motorized wheelchairs for which the government was charged.
>
> Mauskar was indicted on numerous charges relating to this conduct. His first trial ended in a hung jury, and the district court declared a mistrial *sua sponte* on April 4, 2005. Approximately two weeks before his second trial, Mauskar filed a motion to dismiss count 1 of the indictment on grounds of duplicity, which the district court denied. During his second trial, testimony from Tonya Williams revealed that she had forged some progress notes, charges sheets, and other documents by photocopying Mauskar's signature, and that the government knew of these forgeries well before Mauskar's first trial. Mauskar filed a motion to dismiss the indictment due to outrageous government conduct and/or due to violation of the Double Jeopardy Clause, alleging that the government had committed an egregious *Brady* violation by failing to disclose the forgeries during Mauskar's first trial. The district court denied the motion, and the jury convicted Mauskar on twenty-one counts of health care fraud and acquitted him on four counts. The district court sentenced Mauskar to 135 months in prison and ordered him to make restitution of $14,427,242. Mauskar appeals his conviction and sentence.

*Mauskar*, 557 F.3d at 223-224.  With respect to its determination that there was sufficient evidence

to support each count of conviction, the Fifth Circuit wrote:

> ### III. Sufficiency of the Evidence
>
> Mauskar raises numerous challenges to the sufficiency of the evidence to support his conviction. Our inquiry in assessing such challenges in a criminal case is whether a "reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt." *United States v. Mergerson,* 4 F.3d 337, 341 (5th Cir.1993) (quoting *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc)). We view "all evidence and all reasonable inferences drawn from it in the light most favorable to the government." *Id.*
>
> ### A. Count 1
>
> Count 1 of the indictment alleges a single conspiracy with three objects: (1) defrauding Medicare by a scheme relating to physical therapy services; (2) defrauding Medicare and Medicaid by a scheme relating to motorized wheelchairs; and (3) violating the anti-kickback statute by soliciting and receiving remuneration to induce referral of Medicare and Medicaid beneficiaries. To convict Mauskar of conspiracy, the government had to show:
>
>> (1) an agreement between two or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the objective of the conspiracy.
>
> *United States v. Williams,* 507 F.3d 905, 910 n. 4 (5th Cir.2007), *cert. denied,* ____U.S. ___ , 128 S.Ct. 2074, 170 L.Ed.2d 810 (2008) (quoting *United States v. Peterson,* 244 F.3d 385, 389 (5th Cir.2001)). "[E]ach element may be proven by circumstantial evidence," *United States v. Mulderig,* 120 F.3d 534, 547 (5th Cir.1997), and proof of a tacit conspiratorial agreement is sufficient, *United States v. Freeman,* 434 F.3d 369, 376 (5th Cir.2005). Notwithstanding Mauskar's argument to the contrary, the government need have proved only one object of the conspiracy for us to sustain his conviction on count 1: "[A] general guilty verdict on a multiple-object conspiracy may stand even if the evidence is insufficient to sustain a conviction on one of the charged objects." *United States v. Mann,* 493 F.3d 484, 492 (5th Cir.2007) (quoting *United States v. Calle,* 120 F.3d 43, 45 (5th Cir.1997)). Applying this framework, the record contains ample evidence, some of which is discussed below, to support Mauskar's conviction on count 1.

*B. Counts 2, 4, 6, and 9*

Counts 2, 4, 6, and 9 relate to Mauskar's false certification that he provided physical therapy services to Mirage patients. Mauskar's only challenge to the sufficiency of the evidence supporting these counts is that he did not understand that by signing a patient's chart, he certified that he had performed physical therapy services for that patient. The record reflects, however, that Mauskar signed a Medicare form on September 9, 1999, certifying that he directly supervised physical therapy services in a patient's home. The record also reflects that Mauskar told a Medicare investigator that Mirage patients came to his office for treatment, when in fact they did not. This evidence, as well as other evidence in the record, is sufficient to establish Mauskar's culpability in falsely certifying his treatment of Mirage patients.

*C. Counts 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, and 40*

Counts 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, and 40 relate to Mauskar's prescription of motorized wheelchairs to Medicare and Medicaid patients who did not need them. Mauskar first argues that "[t]here was no evidence [he] willingly and knowingly assisted [the DME companies] in their scheme to defraud." To the contrary, the record is replete with such evidence. It is undisputed, for example, that Mauskar prescribed a motorized wheelchair to Herman Conway despite the fact Conway was jogging a mile twice a day at the time Mauskar examined him. Conway testified that he used the scooter for "recreational purposes."

Mauskar next argues that the DME companies' alteration of the certificates of medical necessity he signed forecloses his conviction on all of the above-referenced counts but one. This argument fails for at least two reasons. First, the DME companies' alteration of the certificates does not affect the evidence that Mauskar himself fraudulently billed medically unnecessary tests and evaluations irrelevant to the procurement of a motorized wheelchair. Second, the alteration of the certificates for the purpose of ensuring the government would accept them does not diminish Mauskar's responsibility for signing the certificates. If he had not signed them, the government would not have suffered the losses it did.

Finally, Mauskar argues that "[t]here was no evidence presented that ... Mauskar knew that [the DME companies] were delivering less expensive scooters while billing Medicare for motorized wheelchairs." The record belies this assertion. One of the patients to whom Mauskar prescribed a motorized wheelchair testified that Mauskar asked her if she wanted a scooter:

Q. Now, let me show you what's marked with Bates 1217. Did Dr. Mauskar ask you if you needed a motorized wheelchair because you needed help moving in around your home, your house?

A. Yes, he asked me did I want a wheel-a motor-a scooter. A scooter.

Q. He asked if you wanted a scooter?

A. Uh-huh.

Q. He said specifically "a scooter"?

A. A scooter, uh-huh.

Another patient testified she told Mauskar's receptionist that she had come to "see the physician about a motor scooter." This, along with other evidence in the record, is sufficient to support an inference that Mauskar knew the DME companies were providing his patients with scooters rather than motorized wheelchairs. Moreover, even assuming Mauskar had been ignorant of the fact the DME companies charged the government for motorized wheelchairs and delivered less expensive scooters, the evidence would be sufficient to support his conviction on the counts at issue-the DME companies' compounding the fraud by delivering scooters did not relieve Mauskar of his responsibility for falsely certifying patients' eligibility for motorized wheelchairs.

*Mauskar*, 557 F.3d at 229-230.

## III.   Claims

Mauskar sets forth, as follows, nine claims in his § 2255 motion:

1.      Whether the Government violated Dr. Mauskar's Sixth Amendment rights to counsel and *Crawford's* right to confrontation, and Fifth Amendment right to Due Process, when, while suffering from cancer and radiation treatment, two trials were held closely together during a time when Dr. Mauskar's poor health and poor English prevented him from effectively consulting with his counsel, make decisions regarding acceptance of a plea agreement, and making the decision to testify on his own behalf.

2.      Whether Dr. Mauskar's Due Process rights were violated with the most culpable parties involved in the convictions sustained by Dr. Mauskar received significantly lighter sentences, resulting in unconstitutionally severe sentencing disparity under *Kimbrough*.

3.      Whether Dr. Mauskar's constitutional rights to a jury trial and Due Process were violated when a jury member selected to sit on the jury panel admitted

to the judge and attorneys of both parties that he had seen media regarding the exact same case that was being retried against Dr. Mauskar, resulting in potential jury misconduct.

4.      Whether outrageous and material prosecutorial misconduct by the Government violated Dr. Mauskar's right to Due Process by the Government's selective prosecution, wrongful withholding of exculpatory and mitigating evidence, in violation of *Brady*; and engaging in numerous additional instances of illegal and unethical behavior.

5.      Whether Dr. Mauskar's constitutional rights to a Grand Jury and Due Process were violated when the Government made material misrepresentations to the grand jury, resulting in an improper indictment and the two subsequent superseding indictments.

6.      Whether Dr. Mauskar's mistake of law resulted in an improper conviction, violating Dr. Mauskar's constitutional rights to Due Process and a fair jury trial.

7.      Whether Dr. Mauskar's mistake of fact resulted in an illegal conviction, violating Dr. Mauskar's constitutional rights to Due Process and a fair jury trial.

8.      Whether Dr. Mauskar received ineffective assistance of counsel in violation of his Sixth Amendment right to assistance of counsel for his defense.

9.      Whether Dr. Mauskar is factually and legally innocent of the charged and convicted offenses.

§ 2255 Motion (Document No. 525) at 1-2.   The Government, in its Response and Motion to Dismiss, maintains that no relief is available to Mauskar on any of his claims.


**IV.     Discussion**

At the outset, it must be noted that despite the fact that Mauskar has counsel, his § 2255 motion and his briefing related thereto, is short on facts, allegations and legal support, and long on

7

unsupported conclusions.[1]  For instance, Mauskar states that his mental state and his strong accent impaired his ability to assist his trial counsel, but Mauskar does not allege, and has offered no evidence or authority, that he was legally incompetent at the time of trial.  In addition, Mauskar states that an unidentified juror admitted to having seen media coverage of his first trial, that the grand jury proceedings were flawed, and that he received a harsher sentence than others involved in the offenses, but Mauskar has provided no legal or evidentiary support for his claims that he was denied due process and a fair trial as a result thereof.  As for the remaining claims of prosecutorial misconduct, and factual and legal innocence, Mauskar wholly fails to mention or acknowledge that such claims were addressed and rejected by the Fifth Circuit on appeal.  Mauskar similarly fails to explain why his claims (other than his ineffectiveness claim) were not raised on direct appeal, as they should have been.  It is within this context of conclusory allegations, and Mauskar's failure to establish cause and prejudice for his failure to raise his claims on direct appeal, that each of Mauskar's claims will be addressed in turn.

### A.    Competence Claim (claim one)

In his first claim, Mauskar contends that he could not effectively assist his trial counsel due to his cancer treatments and his heavily accented English.  Mauskar does not allege, *per se*, that he was incompetent at the time of trial, but he does assert that his mental functioning was impaired, that such impairment affected his decision making at trial, and that the extent of his mental impairment should be explored and litigated in this § 2255 proceeding.  Mauskar did not raise this claim in his direct appeal and offers no explanation for failing to do so.

---

[1] In addition, Mauskar's counsel has submitted thousands of pages of exhibits, but makes very little reference to any of them, and has not argued or explained how any of the exhibits support any of his due process claims.

When claims of constitutional or jurisdictional import are not raised on direct appeal, the claims are procedurally defaulted, and can only be considered in a § 2255 proceeding if a movant can show cause for his failure to raise his claims on appeal, and actual prejudice resulting from the alleged errors. *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) ("[A] defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both cause for his procedural default and actual prejudice due to any such errors."); *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) ("When raising issues of jurisdictional or constitutional magnitude for the first time on collateral review, a defendant ordinarily must show both cause for his procedural default and actual prejudice resulting from the error."); *United States v. Acklen*, 47 F.3d 739, 741-42 (5th Cir. 1995) ("Because a challenge under section 2255 'may not do service for an appeal,' a movant may not raise constitutional or jurisdictional issues for the first time on collateral review without establishing both 'cause' for his procedural default and 'actual prejudice' resulting from the error."); *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) ("A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error."), *cert. denied*, 502 U.S. 1076 (1992). Alternatively, procedurally defaulted claims can be considered for the first time in a § 2255 proceeding if the movant can show that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' . . . or that he is 'actually innocent.'"). Here, Mauskar, despite having counsel, makes no showing of cause for his failure to raise this claim in

9

direct appeal, and no showing of prejudice. In addition, given the Fifth Circuit's ruling on the sufficiency of the evidence to support the jury's verdict on each count of conviction, as well as Mauskar's failure to raise any new arguments or present any new evidence of actual innocence, Mauskar's claim that his due process and fair trial rights were affected by his mental impairment is procedurally barred from review.

In addition, even if the claim were not procedurally barred from review, no relief would be available on the claim. A mental impairment, unless it rises to the level of incompetence, does not prevent a defendant from being tried and convicted, and does not raise due process or fair trial issues. That is because the Due Process clause only prohibits the criminal prosecution of a person who is mentally incompetent. *See Pate v. Robinson*, 383 U.S. 375, 378 (1966) ("The state concedes that the conviction of an accused person while he is legally incompetent violates due process."); *see also Washington v. Johnson*, 90 F.3d 945, 949 (5th Cir. 1996) ("It is well settled that due process prohibits prosecution of a defendant who is not competent to stand trial."), *cert. denied*, 520 U.S. 1122 (1997). To the extent Mauskar's claim is that he was suffering from a mental impairment that did not rise to the level of incompetence, no relief is available to Mauskar on such a claim. In addition, to the extent Mauskar is claiming he was incompetent at the time of trial, such a claim, for the reasons set forth below, fails on the merits.

The standard for mental competency is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). Procedural due process guarantees require that a competency hearing be held if there is any indication that a defendant may be incompetent. *Pate*, 383 U.S. at 385; *Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir. 1980) ("A court must sua sponte conduct an inquiry into a

defendant's mental capacity if the evidence raises a bona fide doubt as to the defendant's competency at that time.").

A habeas petitioner who claims that his substantive due process rights were violated by virtue of being convicted of a crime while incompetent must "'positively, unequivocally and clearly generate a real, substantial and legitimate doubt'" as to his mental capacity "'to meaningfully participate and cooperate with counsel during trial.'" *Washington*, 90 F.3d at 950 (quoting *Bruce v. Estelle*, 536 F.2d 1051, 1058-59 (5th Cir. 1976)); *see also Enriquez v. Procunier*, 752 F.2d 111, 114 (5th Cir. 1984) ("'Courts in habeas corpus proceedings should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the petitioner.'") (quoting *Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir. 1973)), *cert. denied*, 471 U.S. 1126 (1985). Once that showing is made, the petitioner must prove, by a preponderance of the evidence, that he was, in fact, incompetent at the time of trial. *Washington*, 90 F.3d at 950.

Here, there is no evidence whatsoever that Mauskar was incompetent at the time of trial. His attorneys, while expressing some concern about his decision-making abilities, all believed that Mauskar was legally competent at the time of trial. Kent Schaffer and Richard DeToto so stated in their affidavits:

> Although I did not believe Dr. Mauskar to be legally incompetent I did feel at times that he did not fully understand the full depth of the potential problems that he faced; despite the fact that he was apprised of this on several occasions.

> * * *

> During our numerous conversations with Dr. Mauskar prior to his second trial, he appeared to be physically tired and run down. Although I did not believe Dr. Mauskar to be legally incompetent, it did appear that he was physically exhausted prior to and during the second trial.

11

Affidavit of Kent Schaffer (Document No. 1-1 in Civil Action No. H-10-1939) at 2; Affidavit of Richard Detoto (Document No. 1-1 in Civil Action No. H-10-1939) at 1.

In addition, while Mauskar's accent made it difficult for Kent Schaffer to understand him, attorney James D. Day did not have such a problem, and he, on occasion, would repeat or restate Mauskar's statements so that Schaffer could better communicate with Mauskar.[2]  There is no evidence that such a difficulty in communicating, which was essentially solved through Day's assistance and participation, affected Mauskar's ability "to meaningfully participate and cooperate with counsel during trial."

Here, given that Mauskar has failed to "'positively, unequivocally and clearly generate a real, substantial and legitimate doubt" as to his competence, and given that Mauskar has not otherwise stated a due process claim premised on any mental impairment that did not rise to the level of incompetence, this claim fails.

### B.    Disparate Sentences Claim (claim two)

In his second claim, Mauskar claims that his due process rights were somehow violated by the disparate sentences that were imposed on the various defendants in this case.  Mauskar contrasts his sentence of 135 months with the sentences of Tonya Williams, Kimberly Selders, Lorine

---

[2] Day stated as follows in his affidavit:
7.  Dr. Mauskar speaks English, but with a heavy Indian accent.
8.  In my many conversations with Dr. Mauskar, I was able to understand him when he spoke perhaps better than any lawyer associated with either his civil or criminal matters.
9.  Quite often I was asked to repeat or paraphrase what Dr. Mauskar had stated to other attorneys including Jay D. Hirsch, deceased, and Kent Schaffer.
10.  In fact, on several occasions I stated to others that I translated Dr. Mauskar's English to English.
11.  Given Dr. Mauskar's accent, many attorneys associated with this matter had difficulty understanding him and, thus, had trouble communicating with him directly.
Affidavit of James Day (Document No. 1-1 in Civil Action No. H-10-1939) at 1.

Hawthorne and Pamela Russel, of 30 months, 30 months, 12 months, and five years probation, respectively. Mauskar also makes note that several culpable parties were not even charged, including Dr. Giselle Greenhaw, Aniefiok Jimmy Eking, and Dr. Mansur, and that one culpable party, Nadine Norman, was acquitted. While Mauskar complains about his harsher sentence as compared with the sentences of his co-defendants, and complains about the Government's failure to prosecute others, he provides absolutely no facts or legal authority to support his claim that the disparity in his sentence violated his right to due process.

Mauskar did not raise this claim in his direct appeal. In addition, he has failed to establish herein the requisite cause and prejudice, or actual innocence to overcome his procedural default of this claim. As such, this due process sentencing disparity claim is procedurally barred from review. In addition, given Mauskar's vague and conclusory allegations, and his failure to provide any authority to support his claim, no relief is available, in any event, on the claim.

The record shows that Tonya Williams and Kimberly Selders were charged with health care fraud in a separate case, Criminal Action No. H-02301. Both Williams and Selders pled guilty in that case pursuant to written plea agreements, and both were sentenced to thirty months imprisonment. In this case, Lorine Hawthorne and Pamela Russel also pled guilty, pursuant to written plea agreements. (Document Nos. 183 & 199). Tonya Williams and Pamela Russel testified at Mauskar's trial. Hawthorne was sentenced to 12 months imprisonment, and Russell was sentenced to five years probation. Aniefiok Jimmy Eking, who Mauskar alleges was not charged, was, in fact, named as a co-defendant in this case, but remains to this date, a fugitive. Nadine Norman, as is reflected in the record, was acquitted on all charges by a jury.

In contrast to these individuals, Mauskar did not plead guilty, was found guilty by a jury of counts 1, 2, 4, 6, 9, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, and 40, and was not

given any points for acceptance of responsibility.  Where the facts and circumstances are disparate, disparate sentences do not, *per se*, constitute a due process violation.  *See United States v. Lawrence*, 179 F.3d 343, 347-50 (5th Cir. 1999), *cert. denied*, 528 U.S. 1096 (2000); *see also United States v. Nichols*, 376 F.3d 440, 443 (5th Cir. 2004) ("disparate sentence resulting from acceptance of a plea agreement or adjustment under section 5K1.1 are examples if 'justified' disparities."), *cert. denied*, 543 U.S. 1055 (2005).[3]

### C.    Juror Bias/Misconduct Claim (claim three)

In his third claim, Mauskar appears to complain about a juror, who disclosed during voir dire that he had seen or heard some news coverage about Mauskar's first trial, that resulted in a mistrial. According to Mauskar, that disclosure by the juror evidenced bias and/or misconduct, which affected his right to due process and a fair trial.

Again, Mauskar did not raise this claim in his direct appeal.  He has also not established the requisite cause and prejudice or actual innocence to overcome the procedural default of the claim. As such, the claim is subject to dismissal as procedurally barred from review in this § 2255 proceeding.  Even if it were not procedurally barred, the record shows that Mauskar is entitled to no relief on the claim.

Although Mauskar did  not identify the juror about which he complains by name or juror number, a review of the voir dire proceedings reveals that juror no. 1 disclosed that he had heard or seen media coverage of Mauskar's first trial.  Trial Transcript, Day 1 (October 31, 2005) (Document No. 466) at 20.  In addition, however, juror no. 1 stated, unequivocally, that he could "set aside

---

[3] In addition, given the contents of the affidavit of Kent Schaffer and Richard DeToto, in which they aver that a plead offer was made to Mauskar that would have resulted in a sentence of 14-18 months, *see* Affidavits of Kent Schaffer and Richard DeToto (Document No. 1-1 in Civil Action No. H-10-1939), an offer that Muskar rejected, this disparate sentence claim borders on the frivolous.

anything that [he] may have read" and "would [ ] be able [ ] to decide [the] case based only upon the evidence received at trial and the instructions on the law" given by the Court. *Id.* at 34-36. Due process only requires that jurors be able to "'lay aside their impression[s] or opinion[s] and render a verdict based on the evidence presented in court.'" *Skilling v. United States*, 130 S.Ct. 2896, 2925 (2010) (*quoting Irvin v. Dowd*, 366 U.S. 717, 723 (1961)).

### D.   Prosecutorial Misconduct Claim (claim four)

In his next claim, Mauskar contends, again in conclusory fashion, that the Government engaged in misconduct by: (1) suborning perjury; (2) selectively prosecuting him; and (3) failing to disclose favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

#### 1.   *Brady* claim

Mauskar's *Brady* claim is premised on the Government's failure to disclose evidence that Kingwood Medical Supply Company was "using stolen prescription and CMN forms," that Mauskar's "rubber stamp with his name and address was stolen," and that Tonya Williams had forged certain progress notes. Mauskar alleges as follows with respect to his *Brady* claim:

> Exhibit E1 is a letter from Dr. Mauskar notifying the assistant U.S. attorney of a Kingwood Medical Supply company that is using stolen prescriptions and CMN forms. Dr. Mauskar's rubber stamp with his name and address was stolen, too. Dr. Mauskar wrote that a reliable source told him that Latisha Teel, a former employee, stole these materials. Dr. Mauskar stated that Ms. Teel was fired for accepting a bribe from a wheel chair recruiter. Exhibit E2 is an investigative report from defense regarding Kingwood Medical Supply company. They had shut down by the time Dr. Mauskar's defense team could approach them. Undersigned has been unable to locate any FBI investigative reports involving this company. However, it is reasonable to believe that this company was submitting fraudulent prescriptions to the government. This was an issue that the 5th Circuit used to avoid holding the government responsible for their misconduct, although they certainly used some sharp language in order to rebuke the government.

> \* \* \*

> One of the central allegations is that Dr. Mauskar certified that he provided services despite the fact that he had not done so. The fact that Tonya Williams, an

operator of the Mirage Medical Group forged documents with Mauskar's signature would tend to undermine [the] prosecution's case regarding this issue. The 5th Circuit fails to make a determination because of Mauskar's appellate attorney's failure to identify the forged documents with any specificity or to explain to which charges the documents were relevant. To obtain relief that Dr. Mauskar deserves, a specific materiality analysis needs to be conducted.

**Specific Materiality Analysis:**

Tanya [sic] Williams spoke with the FBI on 2/19/02. Tanya Williams was shown the original Mirage file for patient Cefus Cunningham. Dates written next to Dr. Greenhaw's purported signature on progress notes in the file were obviously covered with white out and replaced with new dates which correspond to the dates written on the notes by PT technician, George Skinner.

Williams admitted that she and Selders used white out to cover the original dates written next to Dr. Greenhaw's signature on the progress notes, and Williams wrote in the new dates next to Dr. Greenhaw's signature. Williams did not know why she and Selders changed the dates on Cunningham's progress notes. Prior to altering the file, Cunningham's granddaughter complained to Medicare that Mirage had promised but failed to pay Cunningham's Electric bill. According to Williams, Cunningham's granddaughter was confused about the issue. As a result of the complaint, Medicare requested from Mirage a copy of Cunningham's file. Williams and Selders then went through Cunningham's file, changed the dates next to Greenhaw's signature and sent a copy of the file to Medicare.

§ 2255 Motion (Document No. 525) at 12, 15-16.

In his direct appeal, Mauskar raised his *Brady* claim. The Fifth Circuit discussed and rejected the claim as follows:

The record establishes that before Mauskar's first trial, the government knew Tonya Williams had forged Mauskar's signature on treatment charge sheets, progress notes, and other documents. Williams testified on cross examination during Mauskar's second trial that the government had been aware of the forgery for more than two years:

Q:     Who did you tell that you had been photocopying Dr. Mauskar's signature?

A:     Mr. Louis, Mr. McGregor.

Q:     And was this at a meeting you had at the U.S. Attorney's Office?

A:     Yes.

16

Q:     And it was before the trial began?

A:     Yes.

Q:     Is it while you were in prison or before you went to prison?

A:     Before I went to prison.

Q:     So, the government has known for at least for the last two years that you photocopied these signatures.

A:     (Nods head.)

Q:     Yes or no?

A:     Yes.

The government concedes that at least some of these documents were relevant to some of the charges against Mauskar, and that it failed to disclose the forgeries until after Mauskar's second trial was underway. Following Williams's testimony, Mauskar moved for dismissal of the indictment due to outrageous government conduct and/or violation of the Double Jeopardy Clause, alleging that the government committed an egregious *Brady* violation by failing to disclose the forgery.

"To make out a *Brady* violation, a defendant must show that (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to either guilt or punishment." *Miller*, 520 F.3d at 514 (internal quotation marks and citations omitted). "Evidence is material under *Brady* when there is a 'reasonable probability' that the outcome of the trial would have been different if the suppressed evidence had been disclosed to the defendant." *United States v. Runyan*, 290 F.3d 223, 245 (5th Cir. 2002). Mauskar, however, fails on appeal to identify the forged documents with any specificity, or to explain to which charges the documents were relevant. In fact, Mauskar acknowledges that he was acquitted on some of those charges. Without this information, we cannot conduct the analysis necessary to determine whether the documents were "material" within the meaning of *Brady*. *See Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) ("[S]howing that the prosecution knew of an item of favorable evidence unknown to the defense does not amount to a *Brady* violation, without more."); *see also Smith v. Black*, 904 F.2d 950, 967 (5th Cir. 1990) (observing that "[t]he materiality of *Brady* material depends almost entirely on the value of the evidence relative to the other evidence mustered by the [government]"), *vacated*, 503 U.S. 930, 112 S.Ct. 1463, 117 L.Ed.2d 609 (1992), *abrogated on other grounds by Stringer v. Black*, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992).

Nor has Mauskar established the existence of outrageous government conduct that required dismissal of his indictment, a question we review *de novo*. *United*

*States v. Asibor*, 109 F.3d 1023, 1039 (5th Cir. 1997). "Government misconduct does not mandate dismissal of an indictment unless it is 'so outrageous' that it violates the principle of 'fundamental fairness' under the due process clause of the Fifth Amendment." *United States v. Johnson*, 68 F.3d 899, 902 (5th Cir. 1995) (citing *United States v. Russell*, 411 U.S. 423, 431-32, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973)). "Such a violation will only be found in the rarest circumstances." *Id.* (citing *United States v. Yater*, 756 F.2d 1058, 1066 (5th Cir. 1985)); *see also United States v. Childs*, 447 F.3d 541, 545 (7th Cir. 2006) (observing that "dismissing criminal charges against a defendant because of government misconduct" is an "extreme step"). We are deeply concerned by the government's failure to disclose Williams' forgery of Mauskar's signature on documents relating to the charges against him. "The duty of a prosecutor, as the representative of the sovereign in a criminal case, is not that it shall win a case but that justice shall be done." *Dickson v. Quarterman*, 462 F.3d 470, 479 (5th Cir. 2006) (internal quotation marks and citations omitted). Nonetheless, we cannot say on the record before us that the nondisclosure in the present case is so "shocking to the universal sense of justice," *Russell*, 411 U.S. at 432, 93 S.Ct. 1637 (quoting *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960)), that the government should have been deprived for all time of the opportunity to prosecute Mauskar.

      In so concluding, we note that contrary to Mauskar's assertion, the government did *not* suborn perjured testimony from Tonya Williams regarding the authenticity of the signatures on the forged documents. Williams testified during Mauskar's first trial that she had never written "Dr. Mauskar's name on any Medicare application form that was submitted to Medicare." This testimony is not inconsistent with her subsequent testimony during Mauskar's second trial that she forged treatment sheets, progress notes, and other documents. Had the government suborned perjury regarding the authenticity of signatures on the forged documents relating to the charges against Mauskar, the outcome of this appeal may have been different.

*Mauskar*, 557 F.3d at 231-232. While Mauskar maintains that a "specific materiality analysis needs to be conducted" in this § 2255 proceeding, claims that have already been addressed on direct appeal *cannot* be relitigated in a § 2255 proceeding. *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997); *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir.), *cert. denied*, 476 U.S. 1118 (1986). This is true regardless of whether the claim could be been presented on appeal in a more favorable way.[4]

---

[4] In *United States v. Shugart*, 2011 WL 1130592 *2 (S.D. Miss. 2011), the District Court for the Southern District of Mississippi, relying on cases from the Second and Third Circuit, noted that issues that had been rejected in a direct appeal could be relitigated in a § 2255 proceeding if: "(1) there has been an intervening change of law, (2) [the movant] presents newly discovered evidence,

Here, the Fifth Circuit rejected Mauskar's *Brady* claim, in part, because Mauskar had failed to "identify the forged documents with any specificity, or explain to which charges the documents were relevant." Mauskar cannot now relitigate the claim herein by providing support for the claim that was not presented to the Fifth Circuit. Moreover, a review of Mauskar's § 2255 filings reveals no better identification of the forged documents than was provided the Fifth Circuit on appeal. As such, no relief is available to Mauskar on his *Brady* claim.

### 2.    Perjury Claim

In his next claim of prosecutorial misconduct, Mauskar maintains that the Government offered perjured testimony on two issues: (1) whether arthritis can be "cured"; and (2) whether Houston is an medically under-served area. Mauskar did not raise these allegations of perjury in his direct appeal, and has not shown cause and prejudice associated with such failure, or that he is actually innocent. Mauskar's prosecutorial misconduct claim, which is premised on these allegations of perjury, is therefore procedurally barred from review. Even if it were not, Mauskar is not entitled to any relief on the merits of the claim.

"[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976). To be entitled to relief on a claim that the Government used perjured testimony, it must be shown (1) that the evidence presented was false; (2) that the evidence was material; and (3) that the prosecution knew

---

or (3) [the movant] demonstrates that his counsel rendered ineffective assistance on appeal." Here, there has been no intervening change of law, and no new evidence presented. In addition, while Mauskar makes mention of the fact that the Fifth Circuit did not conduct a full materiality review because appellate counsel did not identify with any specificity the documents made the basis of Mauskar's *Brady* claim, Mauskar has not alleged in this § 2255 proceeding that appellate counsel was ineffective. In addition, Mauskar has still not, despite having counsel in this § 2255 proceeding, identified the documents made the basis of his *Brady* claim with any specificity.

that the evidence was false.  *United States v. Blackburn*, 9 F.3d 353, 357 (5th Cir. 1993), *cert.*

*denied*, 513 U.S. 830 (1994); *Shaw v. Estelle*, 686 F.2d 273, 275 (5th Cir. 1982), *cert. denied*, 459

U.S. 1215 (1983).  The use of perjured testimony is material "only where 'the false testimony could

in any reasonable likelihood have affected the judgment of the jury.'"  *Knox v. Johnson*, 224 F.3d

470, 478 (5th Cir. 2000) (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)), *cert. denied*,

532 U.S. 975 (2001).  "To say that an error did not contribute to the verdict is, rather, to find that

error unimportant in relation to everything else the jury considered on the issue in question, as

revealed by the record."  *United States v. O'Keefe*, 128 F.3d 885, 894 (5th Cir. 1997), *cert. denied*,

523 U.S. 1078 (1998).  Discrepancies in testimony alone do not establish the knowing use of

perjured testimony.  *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988); *see also Kutzner v.*

*Johnson*,  242 F.3d 605, 609 (5th Cir. 2001) ("Conflicting or inconsistent testimony is insufficient

to establish perjury.").

Here, Mauskar maintains that Carl Gruninger's testimony that "arthritis cannot cured . . . was

refuted by the state's own witnesses in both trials." § 2255 Motion (Document No. 525) at 13.  In

addition, in contrast to Gruninger's testimony at trial, Mauskar argues that Houston does have

medically underserved areas, and that "it looks like the area in which Dr. Mauskar practiced has been

so designated, which would allow physicians to supervise from their office the treatment of patients

by other medical personnel." *Id.*

Mauskar has submitting nothing to substantiate his claim that the government offered

perjured testimony that affected the judgment of the jury.  With respect to Gruninger's testimony

about whether arthritis can be cured, Mauskar has not argued or made any showing that such

testimony was "material."  With respect to whether Houston had underserved areas, Mauskar has not

shown that Gruninger's testimony was false.  At trial, Gruninger testified that there were no

medically underserved areas in Houston at the time of Mauskar's offenses.   Trial Transcript, Day 2 (Document Nos. 400 & 463) at 31. That testimony went completely unchallenged.  While Mauskar now alludes to having conducted a "simple web search" which revealed "areas designated as medically underserved by Medicare, as far back as 1993," and while Mauskar points to Exhibit J-2 in support of his claim that there are medically underserved areas in Houston, neither Mauskar's allegations or his submissions show that the areas in Houston in which he was practicing at the time of the offenses made the basis of this case had been designated as medically underserved *by Medicare*.[5]  Only a designation by Medicare that the areas served by Mauskar were medically underserved would have allowed Mauskar to charge for physical therapy sessions that he did not directly supervise.  In the absence of clear evidence that Medicare had designated areas served by Mauskar as medically underserved at the time of the offenses made the basis of this case, Mauskar has not raised a genuine issue as to whether false testimony was offered.  This allegation of prosecutorial misconduct is therefore both procedurally barred, and subject to dismissal on the merits.

### 3.    Selective Prosecution Claim

In the third aspect of his prosecutorial misconduct claim, Mauskar maintains that he was prosecuted, while others with the same, or greater, culpability, including Dr. Greenhaw, were not. Mauskar claims that this amounts to selective prosecution in violation of his due process rights.

As with most of his other claims, this allegation of prosecutorial misconduct was not raised on direct appeal, and therefore is, for the same reasons set forth above, procedurally barred from

---

[5] Mauskar seems to concede that he is not even sure of the significance of the web search information he has submitted.  Mauskar's Reply (Document No. 30 in Civil Action No. H-10-1939) at 12 ("If you enter the address of Dr. Mauskar's clinic used on the charged offense date, the information given is that this area was designated in 2007, although this information is honestly ambiguous to [the] undersigned.").

review.  In addition, the claim fails on the merits because Mauskar has failed to show that his

prosecution "had  a discriminatory effect and was motivated by an invidious purpose." *Lawrence*,

179 F.3d at 349 ("To succeed with a selective prosecution claim, a defendant must demonstrate that

the enforcement had a discriminatory effect and was motivated by an invidious purpose.").

### E.    Grand Jury Claim (claim five)

In his next claim, Mauskar alleges that his "rights to a grand jury and due process were

violated when the Government made material misrepresentations to the grand jury, resulting in an

improper indictment and  superceeding [sic] indictments. " In support of this claim, Mauskar states

only as follows:

> The wrongfully withheld evidence prevents proper evidence to be presented
> to the grand jury.  The state made misrepresentations to the Grand Jury by essentially
> "sins of omission."  Furthermore, all sentencing guidelines that add additional time
> to ones [sic] sentence is a violation of the Grand Jury constitutional right.  Holding
> Dr. Mauskar responsible for so much more of the leadership role than Selders,
> Williams, and Ecking, is unjust and counterintuitive.

§ 2255 Motion (Document No. 525) at 16.  Mauskar did not raise this claim in his direct appeal and

has not established cause and prejudice or actual innocence to overcome the procedural default of

this claim.  As such, the claim is procedurally barred from review.

In addition, the claim is subject to dismissal as conclusory.  Mauskar provides no facts or

legal authority to support his claim that his right to a grand jury was violated.  He also alludes to

sentencing issues which have no bearing on the validity of a grand jury proceeding.  The record

shows that both an indictment and a superseding indictment were returned by a grand jury, as is

required by the Fifth Amendment.  Because Mauskar has failed to identify how either grand jury

proceeding was invalid, this claim fails.

### F.      Sufficiency of the Evidence Claims (claims six, seven and nine)

In claims six, seven and nine, Mauskar challenges the sufficiency of the evidence. In claim six, Mauskar alleges that his conviction was based on a mistake of law, in that he did not act willfully; in claim seven, Mauskar alleges that conviction was based on a mistake of fact, in that his actions were an honest mistake and were based on his good faith reliance on others; and, in claim nine Mauskar alleges that he is factually and legally innocent.

Each of these claims challenges the sufficiency of the evidence to support Mauskar's convictions. Because the Fifth Circuit Court of Appeals found on appeal that the evidence was sufficient to support each count of conviction, these sufficiency of the evidence, even though they have been re-cast in different terms, cannot be relitigated in this § 2255 proceeding. *Kalish*, 780 F.2d at 508; *Rocha*, 109 F.3d at 229. In addition, to the extent the claims raised by Mauskar herein could be construed as independent of the sufficiency of the evidence challenges he raised in his direct appeal, such claims would be procedurally barred from review because they were not raised by Mauskar in his direct appeal. Thus, claims six, seven and nine are subject to dismissal.

### G.      Ineffective Assistance of Counsel Claim (claim eight)

In his final claim, Mauskar maintains that his counsel at sentencing, Marcia Schein, was ineffective. Mauskar does not state what objections counsel should have made, or what further counsel should have done at sentencing, but only alleges vaguely as follows:

> As mentioned infra, Dr. Mauskar's health leaves him very vulnerable. He must count on his counsel to take good care of him and protect him from whatever they can. Ms. Marcia Schein came aboard and stirred the pot. She was retained to assist Dr. Mauskar during his sentencing. Unfortunately, she blew some notices of appeals that caused additional work for other attorneys. *See affidavits in A. generally.*

> If undersigned understands correctly, Ms. Schein was supposed to work with Stanley Schneider. Instead, she proceeded on to the sentencing procedure all by herself. From what it appears, Ms. Schein did not get the second jury's transcript

until after the sentencing. If this is true, it would be difficult for her to make effective substantive objections to the PSIR.

Ms. Schein did not stay in touch with Mr. Schneider at all. In fact, Mr. Schneider did not know his client was sentenced until he saw it in the media. This kind of behavior from an officer of the court gives all attorneys a bad name. Marcia Schein also made some procedural errors that the subsequent attorney had to straighten out. *See Affidavits, generally.* Her performance fell below an objective standard of reasonableness in this case. Ms. Schein caused hardship on other attorneys, but worse, on her own client.

§ 2255 Motion (Document No. 525) at 19-20.[6]

To be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Here, Mauskar fails to allege any particular deficiency and fails to allege or adduce evidence that he was prejudiced. Based on the vague and conclusory allegations of ineffectiveness, and Mauskar's failure to allege any specific deficiency and any resulting prejudice, this ineffectiveness claim must be dismissed. *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (conclusory allegations of ineffective assistance of counsel are insufficient to warrant relief).

---

[6] The allegations in Mauskar's Reply, while more lengthy, are no more specific than those contained in Mauskar's § 2255 motion. *See* Reply (Document No. 30 in Civil Action No. H-10-1939) at 14-18.

## V.  Conclusion and Recommendation

Based on the foregoing and the conclusion that no relief is available to Movant Anant Mauskar on the claims he raises in this § 2255 proceeding, the Magistrate Judge

RECOMMENDS that the Government's Motion to Dismiss (Document No. 542) be GRANTED), Movant Anant Mauskar's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 525) be DENIED, and that this § 2255 proceeding be DISMISSED with prejudice.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 6th day of May, 2011.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE